**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | |
|---|---|
| **KATHLEEN R. ASHENFELTER** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )     **Case No. 2:05CV81MLM** |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of Social Security** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Jo Anne B. Barnhart ("Defendant") denying the application of Kathleen R. Ashenfelter ("Plaintiff")

for Social Security disability benefits under Title II of the Social Security Act, 42 U.S.C. § § 401 et

seq., and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42

U.S.C. § § 1381 et seq. Plaintiff has filed a brief in support of the Complaint. Doc. 9. Defendant

has filed a brief in support of the Answer. Doc. 12. Plaintiff has filed a Reply. Doc. 13. The parties

consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28

U.S.C. § 636(c). Doc. 4.

### I.
### PROCEDURAL HISTORY

On March 2, 2002, Plaintiff filed applications for disability benefits. (Tr. 91-93). Plaintiff's

applications were denied. (Tr.58-61). Plaintiff requested a hearing, which was held on April 21,

2004, before Administrative Law Judge ("ALJ") William E. Kumpe. (Tr. 27-53). By decision dated

May 24, 2004, the ALJ determined that Plaintiff was not under a disability as defined in the Social

Security Act. (Tr. 17-23).

Plaintiff filed a request for review with the Appeals Council. (Tr. 12-13). On November 16, 2005, the Appeals Council denied Plaintiff's request for review. (Tr. 5-9). Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## RECORDS

### A.  Medical Records:

Thomas R. Highland, M.D., of Columbia Orthopaedic Group, reported that Plaintiff was seen on April 9, 1999, for an injury which she sustained on April 5, 1999, while working as an EMT. X-rays of this date showed grade 1 1/2 spondylolisthesis at L4-5. Records further reflect that conservative treatment, including physical therapy, was recommended. (Tr. 205-06).

Dr. Highland's notes reflect that on June 9, 1999, Plaintiff was feeling better and that she was ready to go back to work. (Tr. 206).

Dr. Highland's notes of August 16, 1999, reflect that Plaintiff had returned to work; that she was tolerating it; that certain activities increased her pain; that she was given a steroidal injection; that an MRI was ordered; and that she was told to take two days off from work. (Tr. 207).

Dr. Highland's notes of August 26, 1999, reflect that Plaintiff had an MRI which showed a "herniated disc at 5-1 on the right" and that there was "some mild degeneration and very minimal bulging at 4-5." Notes state that it was the reviewer did not think that the L5-1 level was causing Plaintiff's symptoms. (Tr. 208).

Jennifer L.K. Clark, M.D., of Columbia Orthopaedic Group, reported on September 24, 1999, that examination of Plaintiff showed negative straight leg raising and 5/5 strength for hip flexion and extension, knee extension, knee flexion, dorsifelxion, plantar flexion, and extensor hallucis longus. Notes of this date further state that an EMG "showed normal peroneal motor and sensory response

2

other than low amplitude in the peroneal nerve distribution, although her feet were somewhat cold."

Dr. Clark's impression was as follows:

> Minimal findings in the medial gastroc can be seen from local trauma. She has recently had a fall and did have some bruising in the area, but it also can be seen or superimposed upon an S1 radiculopathy. ... Certainly MRI would suggest an S1 radiculopathy with loss of amplitude in the peroneal muscles. ... I don't believe her exam is typical for that of peripheral neuropathy. Her findings, however, are minimal.

(Tr. 209).

Dr. Highland's notes of September 24, 1999, reflect that an MRI did not show signs of nerve damage and showed S1 radiculopathy and that Plaintiff was told to return in four weeks. (Tr. 210).

Dr. Highland's notes of December 2, 1999, state that Plaintiff was "still having reoccurrence of pain" and that she was scheduling surgery for the first of the year. (Tr. 211).

Records of Columbia Regional Hospital reflect that Plaintiff had a "lumbar laminotomy, excision herniated disk L5-S1" on February 15, 2000. (Tr. 181-82).

Dr. Highland's notes of March 14, 2000, state that Plaintiff was "four weeks out" from having surgery; that she was doing well; that her leg pain was much better; that she had soreness in her back; and that she was to be seen in six weeks. (Tr. 212).

Dr. Highland's notes of April 20, 2000, reflect that Plaintiff "continue[d] to have soreness in the right side of her back and she [had] periods where she [had] more discomfort in her back." Dr. Highland reported on this date that Plaintiff "may or may not be able to return back to her job that involves lifting; we will just have to see how things go." (Tr.212).

Dr. Highland reported on June 5, 2000, that Plaintiff could not return to her regular job and that she would have to pursue Vocational Rehab. (Tr. 214).

On September 7, 2000, Dr. Highland completed an information sheet which states that Plaintiff was able to return to work with the permanent restriction of no lifting over twenty-five

3

pounds. Dr. Highland also reported on this date that Plaintiff still had some "soreness in her back and occasional soreness down her leg but nothing bad. I am going to release her back to a job with no lifting over 25 pounds and I have encouraged her to pursue Voc Rehab and not to return to the job that she had." (Tr. 215-16).

In a letter dated October 10, 2000, Dr. Highland stated that "although [Plaintiff] had improvement of her symptoms she has not improved to where she can return back to her regular job." Dr. Highland further reported that Plaintiff "has a permanent restriction of no lifting over 25 pounds. She has a permanent partial disability rating of 15 percent to the body as a whole as it relates to work injury in 1999." (Tr. 217-18).

Paul S. Jones, D.O., reported on May 29, 2002, that he examined Plaintiff for purposes of a disability evaluation. Dr. Jones's report states that Plaintiff said that she was not seeing a doctor because she did not have insurance and that she had not had physical therapy or x-rays to determine whether there is any instability in her spine. Dr. Jones's report further states that Plaintiff said that she owned a restaurant; that she works at Fairway Dinning in the Macon Country Club; that she smoked a half pack of cigarettes and drank ten cups of coffee a day; and that she was independent in ambulation, transfers, dressing, communication, reading, writing, bowel and bladder care, self-feeding and cooking. Dr. Jones concluded that Plaintiff had spinal stenosis and symptomatic spondylosis L4-L5 with possible segmental instability. He further reported that Plaintiff can sit continuously; that standing and walking were variable; that he recommended alternating sitting and standing by one hour at a time; that she should avoid twisting; that she can lift up to twenty-five pounds; that he would recommend she lift only from knee to chest; that she can push and pull up to twenty-five pounds; that she can climb stairs frequently with handrails; she can "do continuous activities with simple grasping, power grasping, pushing, pulling, wrist twisting and fine motor"; that

4

she should avoid bending and stooping altogether; she can squat, kneel, crawl and reach above her shoulders occasionally; that her pain will increase if she performs a lot of activity above her shoulders; and that he saw "no problem as far as communication, reading, writing, hearing, speaking or traveling." (Tr. 223-24).

On June 20, 2002, Ruth Martin, a counselor with the DDS, reported in Physical Residual Functional Capacity Assessment that Plaintiff's only environmental limitation is in regard to vibration; that she can lift twenty pounds occasionally and frequently lift ten pounds; that she can sit and stand and/or walk 6 hours in an 8-hour workday; and that she has unlimited ability to push and/or pull. Ms. Martin said that in completing the Assessment she relied on Dr. Highland and Dr. Jones's recommendations that Plaintiff not lift over twenty-five pounds. (Tr. 228-35).

In a report dated September 10, 2004, Dr. Highland stated that Plaintiff had increasing pain in her back and down her legs in the past few years. Dr. Highland further reported that Plaintiff stated she went "to vocational rehab, however vocational rehab told her that they could not really help her with any specific training and that she should be able to qualify for any job she wanted to pursue. She never got any specific training from voc rehab." Dr. Highland reported that Plaintiff also told him that she tried to work, "but [] the pain has gotten worse when she tries to work." Dr. Highland also reported on this date that when he examined Plaintiff, straight leg raising on the right produced both back and right leg pain; that she had absent Acxhilles reflex on the right, some mild diminished sensation along the lateral calf on the right side to pinprick and light touch; that straight leg raising on the left was negative; that rotation to Plaintiff's hips showed mild limitation and did not "really cause her any pain"; that there were no neurologic defects to the left lower extremity; that she had diminished range of motion to her back because of pain; and that "she seem[ed] to be in significant pain." Dr. Highland further reported that he told Plaintiff that he thought that "if she had

5

a fusion, once she recovered she wold be able to eventually return back to work" and that he would see her after she "gets some kind of insurance coverage." (Tr. 265).

An x-ray report dated September 10, 2004, states that the impression was marked degenerative disease at L5-S1 with Grade II spondylolisthesis of L5-S1. (Tr. 266).

Notes of Dr. Highland dated October 31, 2005, state that he told Plaintiff that she needs to have surgery on her back; that her headaches "were probably referred to her back"; and that he gave her medication for headache and pain. Plaintiff reported on this date that her pain had increased. Doc. 9, Ex. 1.

Dr. Highland completed a Lumbar Spine Residual Functional Capacity Questionnaire on March 12, 2006. In this questionnaire Dr. Highland reported that Plaintiff has degenerative disc disease of the lumbar spine associated with spondyloslisthesis at L5-S1; that this has resulted in back pain, pain down her leg, and headaches; and that these findings are seen on x-ray and MRI scans of Plaintiff's lumbar spine. Dr. Highland also reported that Plaintiff has pain starting in the low back and radiating down the back of her legs with numbness and tingling; that she has pain in her low back which radiates up into her neck with headaches; and that she has diminished range of motion; and that she is taking significant pain medications which can cause drowsiness. This report also states that Plaintiff's pain frequently will interfere with attention and concentration; that her impairments are expected to last at least twelve months; that she can sit and stand continuously at one time for thirty minutes; that she can sit four hours and stand/walk two hours in an 8-hour workday; that she needs a job which permits her to take unscheduled breaks and to shift positions at will. Doc. 9, Ex. 2.

6

**B. Claimant Questionnaire:**

In a claimant questionnaire dated April 21, 2001, Plaintiff reported, among other things, that she cannot work as an EMT; that at work she prepares meals for anywhere from 50 to 100 people, including "meat, potato, veggie, salad & dessert"; that she can drive anywhere if she uses a lumbar support; and that she works seven days a week , twelve hours a day unless she starts having pain at which time she leaves work. (Tr. 153-55).

## III.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ..." Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant

at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § § 404.1520(f). Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

8

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

9

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 902 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health and Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-7 (8th Cir. 1982) (en banc). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Rautio, 862 F.2d at 180; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

## IV.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. Krogmeier, 294 F.3d at 1022.

Plaintiff contends that the ALJ failed to consider the opinion of Dr. Jones including his recommendation that Plaintiff alternate sitting and standing by one hour at a time, avoid twisting, lift up to twenty-five pounds only from knee to chest height, squat, kneel, crawl, and reach above her shoulders occasionally, and perform no bending and stooping. Plaintiff also contends that the ALJ's decision should be reversed and remanded because he did not have the opportunity to review Dr. Highland's records of September 2004 and October 2005 and the questionnaire which he completed in March 2006.

12

## A.    Dr. Highland's September 10, 2004 and October 2005 Records and the March 2006 Questionnaire:

As stated above, Plaintiff contends that this matter should be reversed and remanded because the ALJ did not have the opportunity to consider Dr. Highland's reports of September 10, 2004 and October 31, 2005 and the questionnaire which he completed on March 12, 2006.

Dr. Highland's September 10, 2004 report, which was prepared after the date of the ALJ's decision was considered by the Appeals Council. (Tr. 6). The Appeals Council found that this report which stated that Dr. Highland's impression that Plaintiff has degenerative disease and spondylolisthesis was not a basis for changing the ALJ's decision.[1] Dr. Highland's report of October 31, 2005 reflects that he told Plaintiff on this date that she should have surgery and that Plaintiff reported that her pain had increased. The record does not reflect whether or not Dr. Highland completed the questionnaire of March 2006 as a result of a subsequent examination of Plaintiff or whether he based his responses in this questionnaire on his earlier records. In any case, evidence obtained after the date of an ALJ's decision is relevant only if it relates to a claimant's condition on or before the date of the ALJ's decision. Goad v. Shalala, 7 F.3d 1397, 1398 (8th Cir. 1993).

Additionally, to reopen the record because of new evidence, the evidence must be "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied." Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997). While the record reflects that Dr. Highland saw Plaintiff on September 10, 2004, and October 31, 2005, his conclusions on these dates are cumulative of his earlier findings which were considered by the ALJ. Moreover, Dr.

---

[1]    The court will consider whether the ALJ's decision is supported by substantial evidence on the record as a whole, including the September 2004 report of Dr. Highland. See Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996).

Highland's report of March 2006 in regard to Plaintiff's limitations is cumulative; Plaintiff's limitations were also addressed by Dr. Jones in his report of May 2002 and by Ms. Martin in her Assessment of June 2002. Moreover, Dr. Highland's report of October 2005 reiterates his earlier statement that Plaintiff should have surgery. As such, the court finds that Dr. Highland's reports of September 10, 2004, October 31, 2005, and the questionnaire he completed on March 12, 2006, are cumulative and that, therefore, the record need not be reopened for consideration of their content. See Jones, 122 F.3d at 1154. The court finds, therefore, that Plaintiff's argument that this matter should be reversed and remanded for consideration of Dr. Highland's reports of September 2004 and October 2005 and for consideration of the March 2006 questionnaire is without merit.

## B. The ALJ Consideration of Dr. Jones's Report:

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because upon determining Plaintiff's RFC the ALJ did not consider the limitations found by Dr. Jones who examined Plaintiff.

The ALJ concluded that Plaintiff has the RFC to lift and carry twenty pounds, can stand, walk and sit six hours in an 8-hour workday; and needs to occasionally alternate positions.[2] Upon reaching this conclusion the ALJ did consider Dr. Jones's report stating that Plaintiff could heel and toe walk and squat without difficulty; that physical examination revealed no spasms in the low back and no atrophy of the legs; that Plaintiff had full range of motion of both the upper and lower extremities; and that Plaintiff could carry a twenty-three pound box around the room and put it on

---

[2]     Upon determining that Plaintiff can perform her past relevant work, the ALJ solicited the testimony of a vocational expert ("VE"). The ALJ asked the VE if a person with Plaintiff's RFC could perform any of her past relevant jobs including cook, cashier, waitress, EMT, and accounts receivable clerk. The VE responded that the hypothetical claimant could be employed as an accounts receivable clerk.

the floor without too much difficulty. The ALJ also considered that Dr. Jones reported that Plaintiff can sit continuously and that standing and walking were going to be variable. (Tr. 20). The court notes that Dr. Jones was merely an examining doctor who saw Plaintiff only once. It is well settled that the report of a consulting physician who has seen the claimant only once is of little significance by itself. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). See also Turpin v. Bowen, 813 F.2d 165, 170 (8th Cir. 1987) ("The report of a consulting physician who examine[s] a claimant once does not constitute 'substantial evidence' upon the record as a whole."); Piercy v. Bowen, 835 F.2d 190, 181 (8th Cir. 1987).

The ALJ also considered the opinion of Dr. Clark who also examined Plaintiff and that Dr. Clark found that Plaintiff could lift and carry twenty-five pounds, sit about six hours, and had no restrictions in standing and walking.

The ALJ further considered that the only time it was recommended that Plaintiff remain off work was for a brief period following her injury and that by August 1999 Plaintiff reported that she was working and tolerating work duties. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148049 (8th Cir. 2001). The court also notes that Plaintiff reported in April 2001 that she prepares meals for from 50 to 100 people and that she works seven days a week unless she starts having pain. "Working generally demonstrates an ability to perform a substantial gainful activity." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. Moreover, when a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that

impairment during the relevant period. Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). Section 404.1574(a)(1) further states that work which a claimant is forced to stop or reduce below the substantial gainful activity level after a short time because of his impairment is generally considered an unsuccessful work attempt.

Additionally, upon resolving conflicts in the records and upon determining Plaintiff's RFC, the ALJ considered that Plaintiff admitted she was doing well with no major complaints until May 2001 and that even though she reported exacerbation of back pain there is no indication she sought any additional treatment from Dr. Highland or any other physician subsequent to September 2000. (Tr. 20). Indeed, the record reflects that Plaintiff did not have medical insurance when saw Dr. Highland in September 2000 and that Dr. Highland reported that she would not be seen until she had insurance. An ALJ, however, may properly discount a plaintiff's complaints of disabling pain when the plaintiff has not sought medical care available to indigents. Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents); Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). As such, upon resolving the conflicts in the reports of consulting examiners, upon discrediting Plaintiff's allegation of disabling pain, and upon

16

determining her RFC the ALJ properly considered that Plaintiff did not seek medical treatment after September 2000.

Also, upon resolving conflicts in the records and upon determining Plaintiff's RFC, the ALJ properly considered that no doctor opined that Plaintiff was totally incapacitated a result of her impairments. (Tr. 20). Indeed, while Dr. Highland reported in September 2000 that Plaintiff could not return to her prior work and as he opined in September 2004 that Plaintiff's condition was a significant problem and would probably limit her activities, the record does not reflect that he opined that she is unable to work. Rather, in September 2000 Dr. Highland recommended that Plaintiff pursue vocational rehabilitation. See Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987) (holding that a record which contains no physician opinion of disability detracts from claimant's complaints); Fitzsimmons v. Mathews, 647 F.2d 862, 863 (8th Cir. 1981).

Upon resolving the conflicts in the records and upon determining Plaintiff's RFC, the ALJ also considered that Plaintiff was able to sit throughout the hearing without any observable difficulty. Additionally, he considered that Plaintiff testified that she could sit for six hours out of eight hours, if she were able to move around; that she "could sometimes stand or walk six out of eight hours, but probably not for five days a week"; and that she could lift twenty pounds. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), the ALJ's observations of the claimant's appearance and demeanor during the hearing is a consideration. Villarreal v. Secretary of Health & Human Services, 818 F.2d 461, 463 (6th Cir. 1987) (holding that given his opportunity to observe the claimant, the ALJ's conclusions regarding plaintiff's credibility should not lightly be discarded). As such, the ALJ properly considered his personal observations upon resolving the conflicts in the record.

17

The ALJ further considered the testimony of Plaintiff's husband including his testimony that Plaintiff was unable to find work which she could perform in the area where they resided. The ALJ considered that Plaintiff's husband is not a disinterested third party and that his testimony was not consistent with the preponderance and opinions of medical doctors. The Eighth Circuit has frequently criticized the failure of the ALJ to consider subjective testimony of a claimant's family and others. Robinson v. Sullivan, 956 F.2d 836, 842 (8th Cir. 1992) (holding that despite the Eighth Circuit's repeated directives that the Secretary specifically discuss each credibility determination made, the ALJ failed to state the reasons for discrediting the testimony of the claimant's wife). While such testimony must be considered, no case directs belief in such testimony as credible. Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988). If the ALJ is to reject such testimony, it must be specifically discussed and credibility determinations expressed. Smith v. Heckler, 735 F.2d 312, 317 (8th Cir. 1984). Where an ALJ does not specific reasons for discrediting witness testimony but it is nevertheless clear that the ALJ considered the witnesses testimony, such failure may be considered a deficiency in decision writing technique which does not require remand. Robinson, 956 F.2d at 841. In the matter under consideration, the ALJ specifically articulated his reasons for discrediting the testimony of Plaintiff's husband. As such, the ALJ's decision in this regard is consistent with case law. Moreover, it is supported by substantial evidence on the record including the opinion of Dr. Clark and Plaintiff's treatment records. See Rautio, 862 F.2d at 180; Smith, 735 F.2d at 317.

Thus, contrary to Plaintiff's assertion, the ALJ did consider Dr. Jones's report but chose to discredit portions of his report based on the record as a whole, including the opinion of Dr. Clark, who also examined Plaintiff. "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002). See also Tindell

18

v. Barnhart, Slip Op. 05-2873 at 4 (8th Cir. Apr. 19, 2006) ("'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'") (quoting Vandenboom v. Barnhart, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). When considering the weight to be given the opinion of a doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996)). As such, the court finds that the ALJ's consideration of Dr. Jones's report is consistent with the Regulations and case law and that his conclusion in regard to Plaintiff's RFC is supported by substantial evidence on the record as a whole.

## V.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Brief in Support of Complaint is **DENIED;** [9]

**IT IS FINALLY ORDERED** that a separate judgement be entered in the instant cause of action.

/s/Mary Ann L. Medler _____
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of August 2006.

19